IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| ANDRE JOHNSON | * | |
| Plaintiff, | * | |
| v. | * | Case No. 1:22-cv-3268 |
| MAYOR AND CITY COUNCIL OF BALTIMORE | * | |
| | * | |
| Defendant. | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \*

**COMPLAINT**

Andre Johnson, by and through his attorneys, Donald G. Quinn and the Quinn Law Group, alleges and states as follows:

**PRELIMINARY STATEMENT**

1. The Plaintiff, Mr. Johnson, brings this action against The Mayor and City Council of Baltimore, (the "Defendant") for violations of Title VII of the Civil Rights Act of 1964 (Title VII) (42 U.S.C. § 2000e).

2. Defendant hired Mr. Johnson on March 19, 1980, as a laborer with the Department of Public Works, Bureau of Water and Wastewater (the "Department"). Mr. Johnson most recently held the position of Maintenance Manager with the Department.

3. During Mr. Johnson's tenure at the Department prior to the events at issue, he performed the duties of his position in a satisfactory manner and never received disciplinary actions or negative performance reviews.

1

4. Despite Mr. Johnson's many achievements, Defendant retaliated against him for engaging in protected activities. On March 5, 2021, after more than 40 years of service to the Department, Defendant summarily fired Mr. Johnson.

## JURISDICTION

5. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331, because this is a civil action arising under Title VII.

## VENUE

6. Venue is proper in this district under 42 U.S.C. § 2000e-5(f)(3), because the unlawful employment practice was committed in Maryland, and under 28 U.S.C. Section 1391.

## CONDITIONS PRECEDENT

7. On March 8, 2021, Mr. Johnson timely filed a charge of retaliation with the Equal Employment Opportunity Commission ("EEOC"), listed as EEOC Charge No. 12B-2021-0004.

8. On or about September 20, 2022, the EEOC issued Mr. Johnson a Notice of Right to Sue. This Complaint has been filed within 90 days of receipt of that notice. Mr. Johnson has fully complied with all prerequisites to jurisdiction in this Court under Title VII.

## PARTIES

9. Mr. Johnson resides in Essex, Maryland. Plaintiff is a citizen of Maryland.

10. Mr. Johnson is an employee, as defined by Title VII, and Md. Code, Lab. & Empl. § 11-301(b). Mr. Johnson worked for the Department most recently as a Maintenance Manager in Baltimore, Maryland, and he was employed by the

Defendant from approximately March 19, 1980, through approximately March 5, 2021.

11. Defendant Mayor and City Council of Baltimore (the "MCCB") is an employer as defined by Title VII. MCCB is a city within the meaning of 42 U.S.C. § 5302(a)(5), a person within the meaning of 42 U.S.C. § 2000e(a), and an employer within the meaning of 42 U.S.C. § 2000e(b).

**FACTS**

12. Mr. Johnson began working for Defendant on March 19, 1980, as a laborer with the Department. Mr. Johnson most recently held the position of Maintenance Manager with the Department.

13. During his forty-year tenure, Mr. Johnson was praised for his work ethic and success with the Department. He worked his way from laborer to manager and was consistently entrusted with greater responsibility.

14. On multiple occasions, Acting Bureau Head of the Bureau of Water & Wastewater, Mr. Yosef Kebede ("Mr. Kebede") praised Mr. Johnson's work and personally asked Mr. Johnson to take over the duties of Plant Manager at the Patapsco Wastewater Plant.

15. During his tenure, Mr. Johnson has also been commended for his work by Human Resources ("HR") and the Mayor's office. The Department created an onboarding video highlighting Mr. Johnson's success as a City employee, as an example for new hires.

16. Mr. Johnson engaged in protected activity by grieving to his superiors that he and other black employees were subjected to discriminatory conduct by the Wastewater Facilities Division Chief Michael Gallagher ("Mr. Gallagher" or the "Division Chief").

17. On March 1, 2020, Mr. Johnson filed a formal complaint because of the discrimination by Mr. Gallagher. In his complaint, Mr. Johnson directly implicated Mr. Gallagher for engaging in discrimination based on race.

18. Specifically, Mr. Johnson complained that Mr. Gallagher was giving preferential treatment to white employees by providing pay increases to white employees but not similarly situated black employees, placing black employees under a different supervisory scheme than similarly situated white employees, and excluding black supervisors from leadership meetings.

19. On May 6, 2020, because of the complaint, Mr. Johnson reached a settlement (the "Settlement") for the discrimination claim, which directed the Department to increase his pay and grade and placed him under the direct supervision of Mr. Gallagher.

20. As a result of Mr. Johnson's complaint and Settlement, on or after May 6, 2020, Defendant began to marginalize Mr. Johnson by subjecting him to unlawful retaliation. Superiors began to exhibit hostility, negative body language and tone, and suddenly developed a supposed "lack of confidence" in Mr. Johnson's abilities, subjecting him to increased scrutiny and questioning his management decisions.

21. Following his complaint and Settlement, leadership and supervisors, including Mr. Kebede and Mr. Gallagher, began making comments to Mr. Johnson and other Department employees regarding their displeasure with the fact that Mr. Johnson had engaged in the prior protected activity and had received the Settlement, stating they found it unfair, and repeatedly expressed their frustration with the terms of the Settlement.

22. On or around September 20, 2020, the OIG received anonymous complaints about an auto accident occurring in January 2020.

23. On or around September 20, 2020, the OIG also received complaints about abuse of power, and was informed that Mr. Johnson was engaged in a consensual relationship with another employee.

24. On October 13, 2020, Mr. Johnson received a Memorandum (the "Memo") from Mr. Kebede making accusations against Mr. Johnson regarding his management of the Back River Wastewater Treatment Plant ("Back River").

25. Specifically, the Memo implicated Mr. Johnson for failures related to items of concern in an audit by the Maryland Occupational Safety and Health ("MOSH"). In the Memo, Mr. Kebede reprimanded Mr. Johnson for unrealistic performance expectations, implicated him for issues outside of his purview and control, and made false statements about Mr. Johnson's conduct.

26. As a result, on October 14, 2020, Mr. Johnson complained to Director Matthew Garbark ("Mr. Garbark") about Mr. Kebede's scrutinizing and harassing actions.

27. In particular, on October 14, 2020, Mr. Johnson informed Mr. Garbark that following his complaint and Settlement, Mr. Kebede's demeanor changed, and he became increasingly inspecting, hostile, and combative with Mr. Johnson.

28. As a result of Mr. Johnson's response to Mr. Kebede's letter and the complaint to Mr. Garbark, Defendant subjected Mr. Johnson to unlawful retaliation.

29. On October 19, 2020, Mr. Kebede held a meeting with Mr. Johnson in which he conceded his prior Memo contained adverse claims based on unrealistic expectations and unfounded allegations, but indicated that Mr. Johnson was subject to termination.

30. On November 12, 2020, Mr. Johnson sent a second letter to Mr. Garbark to relay the interactions with Mr. Kebede on October 14, 2020, and October 19, 2020. In his letter, he noted that he felt he was experiencing retaliation and hostile work environment due to the actions of Mr. Kebede and requested intervention from Mr. Garbark.

31. On November 16, 2020, Mr. Kebede again sent Mr. Johnson a letter detailing the same allegations as outlined in the prior Memo of October 12, 2020.

32. On information and belief, the Defendant failed to investigate, or act, related to the complaints on October 14, 2020, and November 12, 2020.

33. In or around December 2020, Mr. Johnson ended a long-term romantic relationship with Asia Johnson ("Ms. Johnson"), an employee with DPW.

34. On December 29, 2020, Ms. Johnson was moved under the supervision of Mr. Johnson.

35. On January 25, 2021, the Office of the Inspector General ("OIG") issued a Management Alert stating an investigation into Mr. Johnson occurred based on anonymous complaints.

36. Only four (4) months after Mr. Johnson resolved his complaints of discrimination, the OIG received anonymous complaints against, and began the process of investigating, Mr. Johnson.

37. On February 17, 2021, Defendant questioned Mr. Johnson regarding his knowledge of an inappropriate relationship between a supervisor and a subordinate. Mr. Johnson denied knowledge of any inappropriate relationships.

38. On February 17, 2021, Defendant suspended Mr. Johnson pending a pre-termination conference regarding the alleged abuse of power and City policy violations.

39. Specifically, Defendant alleged Mr. Johnson had failed to report private vehicle damage on City property, withheld business from an authorized vendor, and lied during an investigation into a prior consensual relationship with another employee.

40. Defendant does not have a policy prohibiting fraternization.

41. Defendant does not have a specific policy on auto accidents occurring on City property to private property, where the private vehicle is not in use for City business.

42. Defendant authorizes supervisors the discretion to choose which vendors to utilize when conducting City business.

43. On February 23, 2021, five (6) days later, Defendant questioned Mr. Johnson again regarding his relationship with Ms. Johnson. Mr. Johnson admitted that he had previously been romantically involved with Ms. Johnson but that the relationship had ended in December 2020

44. On March 1, 2021, the Defendant conducted a pre-termination conference.

45. On March 5, 2021, the Defendant issued a Pre-Termination Conference Decision, which indicated Mr. Johnson was to be terminated, in lieu of other disciplinary options, based on Civil Service Commission ("CRC") Rule 56 for negligence in the performance of duty; offensive conduct towards clients, customers, or other city employees; committing acts off duty unbecoming of city employees, and; employee engagement in fraud, theft, misappropriation of funds, and obstruction of an official investigation or any other act of dishonesty.

46. On March 5, 2021, Defendant terminated Mr. Johnson.

47. On or before March 10, 2021, Mr. Johnson filed an appeal with the Civil Service Commission,

48. On August 6, 2021, the CRC issued a Recommendation (the "Recommendation") in the appeal of Mr. Johnson as a result of the hearings occurring from May 7, 2021 through June 4, 2021.

49. The Recommendation upheld Mr. Johnson's termination based on the violations.

50. The Recommendation included testimony from HR and Supervisors involved in the termination which indicated that the policy violations alone would not likely result in termination, admitted a lack of non-fraternization policies, acknowledged the existence of supervisory discretion in the choice of vendors, and admitted the auto policy violation was not a terminable offense. The testimony by the decision-making authorities indicated that the ultimate reason for termination resulted from the initial dishonesty by Mr. Johnson in the investigation regarding his relationship, which had resulted in an irreparable breach of trust that could not be remedied.

51. Only eleven (11) months after Mr. Johnson first complained of discrimination and only nine (9) months after Mr. Johnson resolved his complaints of discrimination, Defendant suspended Mr. Johnson pending an investigation.

52. Only three (3) months after Mr. Johnson complained of harassment and retaliation, Defendant suspended Mr. Johnson pending an investigation.

53. Only four (4) months after Mr. Johnson first complained of retaliation and harassment, Defendant summarily fired Mr. Johnson.

## COUNT ONE

## Retaliation in Violation of Title VII of the Civil Rights Act of 1964
## (42 U.S.C. §§ 2000e et al.)

54. Mr. Johnson repeats and realleges paragraphs 1 through 53 hereof, as if fully set forth herein.

55. On March 7, 2020, Mr. Johnson engaged in protected activity by filing a complaint of discrimination through the Defendant's EEO.

56. In or around May 2020, Mr. Johnson received the Settlement to resolve his complaints.

57. Prior to his complaints, Mr. Johnson performed the duties of his position in a satisfactory manner and never received disciplinary actions or negative performance reviews.

58. Immediately after Mr. Johnson's complaint and Settlement, he was subjected to retaliatory actions and harassment by management.

59. On March 5, 2021, the Defendant terminated Mr. Johnson.

60. Mr. Johnson's forty-year long career, exemplary performance, and otherwise clear record, coupled with unclear policy guidance, entitled Mr. Johnson to other lesser forms of punishment, including progressive discipline, suspension, or demotion, in lieu of termination.

61. Despite the lack of policies prohibiting fraternization or clear direction on the allegedly violated policies, Defendant terminated Mr. Johnson to retaliate for his prior protected activities, using allegations of dishonesty and ambiguous policy violations as pre-text to retaliate against him.

62. Only eleven (11) months after Mr. Johnson complained of race discrimination, Defendant summarily fired Mr. Johnson on March 8, 2021.

63. Only four (4) months after Mr. Johnson first complained of retaliation and harassment, Defendant summarily fired Mr. Johnson.

64. Defendant's stated reason for terminating Mr. Johnson's employment is pretextual and baseless. Defendant fired Mr. Johnson because he complained of race discrimination on March 7, 2020, and because he complained of retaliation in October and November of 2020.

65. Mr. Johnson suffered damages as a result of Defendant's unlawful retaliatory actions, including emotional distress, past and future lost wages and benefits, and the costs of bringing this action.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff respectfully requests judgment as follows:

A. Award Plaintiff for his past and future loss of wages and benefits, plus interest;

B. Order Defendant to reinstate Plaintiff to a position comparable to his former position or, in lieu of reinstatement, award him front pay, including benefits;

C. Award to Plaintiff all costs and reasonable attorneys' fees incurred in connection with this action;

D. Award to Plaintiff compensatory damages; and,

E. Grant Plaintiff such additional or alternative relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all claims properly triable by a jury, pursuant to Rule 38 of the Federal Rules of Civil Procedure and Section 102 of the Civil Rights Act of 1991, 24 U.S.C. Section 1981a.

Dated: 12/19/2022                                    Respectfully Submitted,

/s/ Donald Quinn
Donald Quinn, Fed. Bar No. 22324
846 Ritchie Highway, Suite 2A
Severna Park, Maryland 21146
(443) 247-5444
donquinn@thequinnlawgroup.com

/s/ Alexus Viegas
Alexus Viegas, Fed. Bar No. 30506
846 Ritchie Highway, Suite 2A
Severna Park, Maryland 21146
(443) 247-5444
alexus@thequinnlawgroup.com

*Attorneys for the Plaintiff*

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 19th Day of December 2022, the foregoing Complaint was mailed by first-class mail to:

James L. Shea, Esq.
City Solicitor Baltimore City Law Department
City Hall, Room 101
100 N. Holliday Street
Baltimore, MD 21202
*Attorneys for the Defendant*

                                                                            /s/ Donald Quinn
                                                                            Donald Quinn