IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

|  |  |  |
|---|---|---|
| ANDRE JOHNSON, | * | |
| Plaintiff, | * | |
| v. | * | Civil Action No. RDB-22-3268 |
| MAYOR AND CITY COUNCIL OF BALTIMORE, | * | |
| Defendant. | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM ORDER

On December 19, 2022, Plaintiff Andre Johnson ("Plaintiff" or "Johnson") filed this action, claiming one count of retaliation in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* against Defendant Mayor and City Council of Baltimore ("Defendant" or "City"). (Compl., ECF No. 1.) Before this Court is Johnson's Motion for Leave to File Amended Complaint, (ECF No. 20), which seeks to add one new count of discrimination in violation of Title VII of the Civil Rights Act of 1964 and to provide clarity and details in support of the cause of action stated therein. (ECF No. 20-1.) Also before the Court is Defendant's Motion to Dismiss (ECF No. 12). The issues have been fully briefed, (*see* ECF Nos. 14, 25, 26, 29), and no hearing is necessary. *See* Local Rule 105.6 (D. Md. 2023). For the following reasons, Plaintiff's Motion for Leave to File Amended Complaint (ECF No. 20) is **GRANTED**; and Defendant's Motion to Dismiss (ECF No. 12) is **DENIED** as moot.

## BACKGROUND

Johnson filed his initial complaint in this action in December 2022. (ECF No. 1.) Therein, Plaintiff alleges that Defendant retaliated against him for engaging in protected activities in violation of Title VII of the Civil Rights of 1964, 42 U.S.C. § 2000e *et seq.* (*Id.* at ¶¶ 55–65.) In his Motion for Leave to File Amended Complaint, Johnson seeks to add one new count based on discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* (ECF No. 20.) A summary of the factual and procedural background follows. Unless otherwise noted, the facts are taken from Johnson's Complaint, (ECF No. 1), and are construed in the light most favorable to the non-moving party, Plaintiff. This Court assumes the facts to be true. *Aziz v. Alcolac*, 658 F.3d 388, 390 (4th Cir. 2011); *Kern v. United States*, 585 F.3d 187, 192 (4th Cir. 2009).

### I. Factual Background

Plaintiff Andre Johnson, an African American male, was employed by the Baltimore City Department of Public Works, Bureau of Water and Wastewater (the "Department") from March 19, 1980 until March 5, 2021, when he was terminated by the Department.[1] (ECF No. 1 at ¶¶ 2, 4.) Prior to his termination, Plaintiff held the position of Maintenance Manager with the Department. (*Id.* at ¶ 12.)

On March 1, 2020, Plaintiff filed a formal complaint (the "March 1, 2020 complaint"), which is an activity protected by Title VII of the Civil Rights Act of 1964, alleging discrimination by the Wastewater Facilities Division Chief, Michael Gallagher ("Mr.

---

[1] Defendant Mayor and City Council of Baltimore City is Johnson's employer as defined by Title VII, 42 U.S.C. §§ 5302(a)(5), 2000e(a), and 2000e(b). (ECF No. 1 at ¶ 11.)

Gallagher"). (*Id.* at ¶¶ 16–17, 55.) In the March 1, 2020 complaint, Plaintiff alleged that Mr. Gallagher was giving preferential treatment to white employees by: (1) providing pay increases to white employees but not similarly situated black employees; (2) placing black employees under a different supervisory scheme than similarly situated white employees; and (3) excluding black supervisors from leadership meetings. (*Id.* at ¶ 18.) On May 6, 2020, Plaintiff reached a settlement (the "Settlement") with the City for the discrimination claim, which directed the Department to increase Johnson's pay and grade and placed him under Mr. Gallagher's direct supervision. (*Id.* at ¶ 19.)

In the instant lawsuit, Plaintiff alleges that following the May 6, 2020 Settlement, Mr. Gallagher and Acting Bureau Head of Water & Wastewater Yosef Kebede ("Mr. Kebede") began to unlawfully retaliate against him. (*Id.* at ¶¶ 20, 21.) He alleges that his superiors began to demonstrate hostility towards him, including "negative body language and tone, and suddenly developed a supposed 'lack of confidence.'" (*Id.* at ¶ 20.) He further alleges that leadership and supervisors, including Mr. Gallagher and Mr. Kebede, began making comments to Plaintiff as well as other Department employees regarding their displeasure that Johnson had filed the March 1, 2020 complaint and received a Settlement. (*Id.* at ¶ 21.) According to Johnson, his superiors "stat[ed] they found it unfair, and repeatedly expressed their frustration with the terms of the Settlement." (*Id.*)

On or around September 20, 2020, the Office of the Inspector General ("OIG") began receiving anonymous complaints regarding Johnson. ((*Id.* at ¶¶ 22–23.) The anonymous complaints centered on an auto accident that occurred in January 2020 and accusations that Johnson was abusing his power and engaging in a consensual relationship with another

employee (*Id.*)

On October 13, 2020, Johnson received a memorandum (the "October 13, 2020 memo") from Mr. Kebede accusing Plaintiff of mismanagement of the Back River Wastewater Treatment Plant. (*Id.* at ¶¶ 24, 25.) On October 14, 2020, Johnson sent a letter to Director Matthew Garbark ("Mr. Garbark") regarding Mr. Kebede's reprimand and scrutinizing and harassing actions more generally. (*Id.* at ¶¶ 26, 27.) Specifically, Johnson informed Mr. Garbark that following his March 1, 2020 complaint and Settlement, Mr. Kebede's demeanor towards Plaintiff changed and Mr. Kebede "became increasingly inspecting, hostile, and combative" with him. (*Id.* at ¶ 27.)

On October 19, 2020, Mr. Kebede met with Johnson. (*Id.* at ¶ 29.) According to Johnson, Mr. Kebede conceded that his October 13, 2020 memo contained adverse claims based on unrealistic expectations and unfounded allegations, but nonetheless indicated that Plaintiff was subject to termination. (*Id.*)

On November 12, 2020, Plaintiff sent a second letter to Mr. Garbark regarding the October 13, 2020 memo and subsequent meeting with Mr. Kebede on October 19, 2020. (*Id.* at ¶ 30.) In the second letter, Johnson requested Mr. Garbark's intervention, indicating that he felt he was experiencing retaliation and hostile work environment due to the actions of Mr. Kebede. (*Id.*) Four days later, on November 16, 2020, Mr. Kebede sent Plaintiff another letter detailing the same allegations as outline in the prior memorandum of October 13, 2020. (*Id.* at ¶ 31.)

In or around December 2020, Plaintiff ended a long-term relationship with Asia

Johnson ("Ms. Johnson"),[2] who was also a Department employee. (*Id.* at ¶ 33.) On December 29, 2020, Ms. Johnson was moved under the supervision of Plaintiff. (*Id.* at ¶ 34.)

On January 25, 2021, the OIG issued a Management Alert stating an investigation into Plaintiff occurred based on anonymous complaints. (*Id.* at ¶ 35.) On February 17, 2021, Defendant[3] questioned Plaintiff regarding his knowledge of an inappropriate relationship between him and Ms. Johnson, and Johnson denied knowledge of any such relationship. (*Id.* at ¶ 37.) Defendant then suspended Johnson pending a pre-termination conference regarding the alleged abuse of power and City policy violations. (*Id.* at ¶ 38.) Specifically, Defendant alleged that Johnson (1) had failed to report private vehicle damage on City property; (2) withheld business from an authorized vendor; and (3) lied during an investigation into a prior consensual relationship with another Department employee. (*Id.* at ¶ 39.) According to Plaintiff, the City (1) does not have a specific policy regarding auto accidents to private property occurring on City property in which the private vehicle was not in use for City business; (2) authorizes supervisors the discretion to choose which vendors to utilize when conducting City business; and (3) does not have a policy prohibiting fraternization. (*Id.* at ¶¶ 40–42.)

On February 23, 2021, Defendant questioned Johnson again regarding his relationship with Ms. Johnson. (*Id.* at ¶ 43.) Plaintiff admitted that they had been romantically involved but indicated that the relationship ended in December 2020. (*Id.*)

On March 1, 2021, Defendant conducted the pre-termination conference. (*Id.* at ¶ 44.)

---

[2] It is not indicated whether Ms. Johnson was Plaintiff's wife or a partner who shared the same last name.
[3] This Court adopts the language used by both of the parties in their filings.

On March 5, 2021, Defendant issued a Pre-Termination Conference Decision, indicating that Plaintiff was to be terminated based on Civil Service Commission ("CSC") Rule 56 for negligence in the performance of duty; offensive conduct towards clients, customers, or other city employees; committing acts off duty unbecoming of city employees; and employee engagement in fraud, theft, misappropriation of funds, and obstruction of an official investigation or any other act of dishonesty. (*Id.* at ¶ 45.) He was promptly terminated. (*Id.* at ¶ 46.)

On March 10, 2021, Plaintiff filed an appeal with the Civil Service Commission. (*Id.* at ¶ 47.) The CSC held a series of hearings from May 7, 2021 to June 4, 2021, and ultimately issued a Recommendation upholding Plaintiff's termination on August 6, 2021. (*Id.* at ¶¶ 48–49.) The Recommendation included testimony from Department employees involved in the termination which "indicated that the policy violations alone would not likely result in termination, admitted a lack of non-fraternization policies, acknowledged the existence of supervisory discretion in the choice of vendors, and admitted the auto policy violation was not a terminable offense." (*Id.* at ¶ 50.) The decision-making authorities' testimony revealed that the ultimate reason for Johnson's termination was Plaintiff's initial dishonesty during the investigation into his relationship with Ms. Johnson. (*Id.*)

**II. Procedural Background**

On March 8, 2021, Plaintiff timely filed a charge of retaliation with the Equal Employment Opportunity Commission ("EEOC"), Charge No. 12B-2021-0004. (*Id.* at ¶ 7.) On September 20, 2022, the EEOC determined not to bring a cause of action but issued Johnson a Notice of Right to Sue for the charge of retaliation. (*Id.* at ¶ 8.) On December 19,

2022, Plaintiff initiated this action against Defendant, alleging retaliation in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et al.* (ECF No. 1.)

On February 17, 2023, Defendant filed the pending Motion to Dismiss for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6).[4] (ECF No. 12.) Johnson responded in opposition, (ECF No. 14), and the Defendant replied. (ECF No. 25.)

On April 3, 2023, Plaintiff filed a Motion for Leave to File Amended Complaint. (ECF No. 20.) In his Amended Complaint, Johnson notes he timely filed a charge of discrimination based on race and retaliation with the EEOC, Charge No. 531-2021-01504, on May 25, 2021. (ECF No. 20 at ¶ 8.) On March 10, 2023, the EEOC issued Johnson a Notice of Right to Sue for the charge of discrimination based on race and retaliation. (*Id.* at ¶ 10.) His Motion for Leave to File Amended Complaint (ECF No. 20-1) was filed on April 3, 2023. On May 19, 2023, Defendant responded in opposition, (ECF No. 26), and Johnson replied. (ECF No. 29.) The pending motions (ECF Nos. 12, 20) are ripe for review.

## STANDARD OF REVIEW

### I. Motion to Dismiss Under Rule 12(b)(6) of the Federal Rules of Civil Procedure

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the complaint's factual allegations "must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations omitted). "To

---

[4] Defendants also move to dismiss under Fed. R. Civ. P. 12(b)(1)—lack of subject matter jurisdiction—but subject matter jurisdiction is not addressed in their submission. This Court's subject matter jurisdiction in this case is facially straightforward. Plaintiff's claims are based on Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*; this Court therefore has federal question jurisdiction over those claims. *See* 28 U.S.C. § 1331.

satisfy this standard, a plaintiff need not 'forecast' evidence sufficient to prove the elements of the claim. However, the complaint must allege sufficient facts to establish those elements." *Walters v. McMahen*, 684 F.3d 435, 439 (4th Cir. 2012) (citation omitted). "Thus, while a plaintiff does not need to demonstrate in a complaint that the right to relief is 'probable,' the complaint must advance the plaintiff's claim 'across the line from inconceivable to plausible.'" *Id.* (quoting *Twombly*, 550 U.S. at 570).

## II.   Motion for Leave to File Amended Complaint

Rule 15(a) of the Federal Rules of Civil Procedure provides the general framework for amending pleadings. Specifically, Rule 15(a) provides that, after a response pleading is served, a plaintiff may amend his complaint "by leave of court or by written consent of the adverse party." In general, leave to amend a complaint pursuant to Rule 15(a) shall be "freely" granted "when justice so requires." FED. R. CIV. P. 15(a)(2); *see Foman v. Davis*, 371 U.S. 178, 182 (1962); *Lance v. Prince George's County, Md.*, 199 F. Supp. 2d 297, 300–01 (D. Md. 2002). Nevertheless, the matter is committed to the discretion of the district court, which may deny leave to amend "when the amendment would be prejudicial to the opposing party, the moving party has acted in bad faith, or the amendment would be futile." *Equal Rights Center v. Niles Bolton Assocs.*, 602 F.3d 597, 603 (4th Cir. 2010); *see also Simmons v. United Mortg. & Loan Inv., LLC*, 634 F.3d 754, 769 (4th Cir. 2011); *Steinburg v. Chesterfield Cnty. Planning Comm'n*, 527 F.3d 377, 390 (4th Cir. 2008).

## ANALYSIS

### I.   Plaintiff's Motion for Leave to File Amended Complaint

Johnson seeks to amend his Complaint to include one new count based on

discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* (Mot. Leave Am., ECF No. 20-1; Am. Compl. 11–12, ECF No. 20-2.) Through this additional allegation, Johnson alleges that his employer discriminated against him based on his race. (Am. Compl. ¶ 65, ECF No. 20-2.) Defendant opposes this motion, arguing that Plaintiff's Motion should be denied because it is futile. (Def.'s Opp'n, ECF No. 26.)

"A proposed amendment is futile when it is 'clearly insufficient or frivolous on its face,'" or "if the claim it presents would not survive a motion to dismiss." *Save Our Sound OBX, Inc. v. N.C. Dep't of Transp.*, 914 F.3d 213, 228 (4th Cir. 2019) (quoting *Johnson v. Oroweat Foods Co.*, 785 F.2d 503, 510 (4th Cir. 1986)); *accord In re Triangle Cap. Corp. Sec. Litig.*, 988 F.3d 743, 750 (4th Cir. 2021); *Martin v. Duffy*, 858 F.3d 239, 247–48 (4th Cir. 2017). Importantly, "the review for futility is not an evaluation of the underlying merits of the case. To the contrary, as Judge Hollander of this Court has noted, '[u]nless a proposed amendment may clearly be seen to be futile because of substantive or procedural considerations . . . conjecture about the merits of the litigation should not enter into the decision whether to allow amendment.'" *Crete Carrier Corp. v. Sullivan & Sons, Inc.*, No. ELH-21-328, 2022 WL 313865, at *8 (D. Md. Feb 1, 2022) (quoting *Next Gen. Grp v. Sylvan Learning Ctrs., LLC*, CCB-11-0986, 2012 WL 37397, at *3 (D. Md. Jan. 5, 2012)).

Additionally, a plaintiff alleging employment discrimination must (a) provide direct evidence that discrimination motivated the challenged employment decision; or (b) apply the three-step burden-shifting framework articulated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), to establish that the employer's proffered reason for the decision was a pretext for unlawful discrimination. *Hill v. Lockheed Martin Logistics Mgmt.*, 354 F.3d 277, 284–86 (4th Cir.

2004) (en banc). "The elements for a prima facie case of discrimination in violation of Title VII are: '(1) membership in a protected class; (2) satisfactory job performance; (3) adverse employment action; and (4) different treatment from similarly situated employees outside the protected class.'" *Jabari-Kitwala v. Montgomery Cnty. Pub. Sch.*, No. GLS 22-0069, 2023 WL 4175359, at *11–*12 (D. Md. June 23, 2023) (citing *White v. BFI Waste Servs., LLC*, 375 F.3d 288, 295 (4th Cir. 2004); *McDonnell Douglas*, 411 U.S. at 801). Additionally, Title VII contains an implicit causation element, requiring the plaintiff to plead that "discrimination was a motivating factor in the defendant's decision." *Comcast Corp. v. Nat'l Assoc. of African Am.-Owned Media*, 140 S. Ct. 1009, 1117–19 (2020).

This Court will grant Plaintiff's Motion for Leave to File Amended Complaint because the amendment is neither futile nor prejudicial against the Defendant. As the Fourth Circuit found in *Johnson v. Oroweat Foods Co.*, Rule 15(a) provides that "leave to amend a pleading should be denied only when the amendment would be prejudicial to the opposing party, there has been bad faith of the part of the moving party, or the amendment would have been futile." 785 F.2d 503, 509 (4th Cir. 1986) (citing *Forman v. Davis*, 371 U.S. 178, 182 (1962)). Furthermore, the Fourth Circuit has held that "delay alone is not sufficient to deny leave to amend." *Id.* Such amendments are prejudicial when it "raises a new legal theory that would require the gathering and analysis of facts not already considered by the opposing party . . . where the amendment is offered shortly before or during trial." *Id.* at 510. Where the defendant advances a claim of futility, leave to amend "should only be denied on the ground of futility when the proposed amendment is clearly insufficient or frivolous on its face." *Id.* (citing *Davis v. Piper Aircraft Corp.*, 615 F.3d 606, 613 (4th Cir. 1980), *cert. dismissed*, 448 U.S. 911

(1980)). In cases involving claims under Title VII, courts in the Fourth Circuit have only found futility as a basis to deny amendment where there exists a jurisdictional defect that cannot be cured by amendment or where the court already had sufficient record before it. *See Kruise v. Fanning*, 214 F. Supp. 3d 520 (E.D. Va. 2016), *aff'd sub nom. Kruise v. Speer*, 693 F. App'x 213 (4th Cir. 2017); *see also Abdelhamid v. Sec'y of the Navy*, 525 F. Supp. 3d 671 (E.D. Va. 2021).

Here, Johnson's Motion to Amend Complaint is not futile because there is no jurisdictional defect, nor is the record sufficient to justify denying amendment. As the Defendant concedes, Johnson has clearly met three of the four elements required to demonstrate discrimination as the motivation for Johnson's termination: (1) he became a member of a protected class when he filed the internal reports; (2) he was performing his job satisfactorily prior to this this dispute; and (3) he suffered an adverse employment outcome. (Mot. Dismiss 7–8; ECF No. 12.) Although the parties dispute whether the circumstances suggest an unlawful discriminatory motive, at the pleading stage, Johnson may amend his Complaint to further support his allegations. Because Johnson's proposed amended complaint does not "raise a new legal theory that would require the gathering and analysis of facts not already considered" by the Defendant, such a motion cannot be considered futile or prejudicial. *Johnson*, 785 F.2d at 509.

## II. Defendant's Motion to Dismiss

Defendant seeks to dismiss Plaintiff's original Complaint (ECF No. 1) with prejudice pursuant to Federal Rule of Civil Procedure 12(b)(6) asserting that the Complaint fails to state a claim upon which relief can be granted, and that the Plaintiff's Complaint does not satisfy the elements of a retaliation suit. (Mot. Dismiss, ECF No. 12.) Because this Court is granting

11

Plaintiff's Motion to Amend Complaint, the present motion (ECF No. 12) is DENIED as moot.

## CONCLUSION

For the reasons set forth above, it is this 10th day of July, 2023, hereby **ORDERED** as follows:

1. Pursuant to Fed. R. Civ. P. 15(a)(2), Plaintiff's Motion for Leave to File Amended Complaint (ECF No. 20) is **GRANTED**; and

2. Defendants' Motion to Dismiss (ECF No. 12) is **DENIED** as moot.

Dated: July 10, 2022

/s/
Richard D. Bennett
United States Senior District Judge