# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

|  |  |  |
|---|---|---|
| ANDRE JOHNSON, | * | |
| **Plaintiff,** | * | |
| v. | * | **Case No.: MJM-22-3268** |
| MAYOR AND CITY COUNCIL OF BALTIMORE, | * | |
| **Defendant.** | * | |

\* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM

Plaintiff Andre Johnson ("Plaintiff") filed this civil action against his former employer, the Mayor and City Council of Baltimore (the "City" or "Defendant"), asserting employment discrimination and retaliation in violation of Title VII of the Civil Rights Act ("Title VII"). ECF No. 31. Currently pending is Defendant's motion for summary judgment, ECF No. 67; and Plaintiff's motions to strike, ECF Nos. 76 & 89.[1] No hearing is necessary to resolve the motions. *See* Loc. R. 105.6 (D. Md. 2025). For reasons explained herein, Plaintiff's motions to strike shall be denied, and summary judgment shall be entered in favor of Defendant.

---

[1] Each party also filed unopposed motions for leave to file memoranda with excess pages, ECF Nos. 68, 74, 88, which shall be granted. Additionally, Defendant filed a motion for leave to file responses to Plaintiff's requests for admissions out of time, ECF No. 73, which is unopposed and shall be granted.

## I.    BACKGROUND

### A.  Factual Background

Plaintiff, an African American male, began working as a laborer with the Baltimore City Department of Public Works ("DPW") in the Water and Wastewater Division on March 19, 1980. ECF No. 67-5 at 16:3–7, 22:15–16. Plaintiff was promoted multiple times throughout his employment, ultimately receiving a promotion to Wastewater Maintenance Manager Mechanical of the Black River Plant on November 28, 2011. *Id.* at 44:15–45:3.

#### 1.  Ms. Asia Johnson

In September 2019, Asia Johnson, who has no relation to Plaintiff, began working for DPW. ECF No. 67-6 at 10–11. Plaintiff was part of the panel that interviewed her. *Id.* at 10:10–11. When she was hired, Ben Ziemski was assigned as her supervisor. *Id.* at 13:8–12. After she was hired, Ms. Johnson and Plaintiff began a romantic relationship. ECF No. 67-5 at 214:9–215:17; ECF No. 67-6 at 30:9–31:6. It is not entirely clear when the relationship ended. During her deposition, Ms. Johnson stated that the relationship ended in October 2022. ECF No. 67-6 at 31:16–33:5, 45:1–18. However, in his deposition, Plaintiff stated that it ended by December 2020. ECF No. 67-5 at 219:8–220:17.

In July 2020, there was an incident between Ms. Johnson and her supervisor, Mr. Ziemski, where he covered his face with a mask, pointed his finger in the shape of a gun, and told her to give him all of her money. ECF No. 67-6 at 14:11–15:7. With Plaintiff's assistance, Ms. Johnson filed an EEO complaint against Mr. Ziemski. *Id.* at 15:9–16:1. After that incident, Ms. Johnson's department was directed to report elsewhere. Specifically, Yosef Kebede, the Acting Bureau Head of the Bureaus of Water and Wastewater, directed Mike Gallagher to have Ms. Johnson report to

Plaintiff.[2]  ECF No. 78-17. Plaintiff performed supervisory functions for Ms. Johnson, including approving overtime and signing as her supervisor when she went to the hospital following a work accident. ECF No. 67-6 at 32:6–14; ECF No. 67-23.

### 2. Plaintiff's Internal Complaint and Settlement

In March 2020, Plaintiff filed an internal complaint that was directed to Matthew Garbark, the director of DPW. ECF No. 67-9. The internal complaint alleged unfair labor practices, including an allegation that Plaintiff and other Black employees were being discriminated against in various ways. *Id.* Without any admission of wrongdoing on behalf of DPW, Plaintiff's internal complaint was settled by a pre-determination settlement agreement dated May 6, 2020. ECF No. 67-10. As a result of the settlement agreement, Plaintiff waived further claims against DPW "regarding any matters which were alleged as complaints filed with the EEO Office in the instant case or any other cause of action relating to or arising out of the Complainant's employment with DPW for which the Complainant would have a claim under Title VII[.]" *Id.* at 2–3.

### 3. Investigation into Plaintiff

In September 2020, the Office of the Inspector General ("OIG") received anonymous complaints about Plaintiff regarding allegations of abuse of power and policy violations. ECF No. 67-11 at 1. The complaint alleged that he "failed to report alleged damage to a DPW employee's personal motor vehicle by a Baltimore City vendor" that occurred on City property. *Id.* The complaint also alleged that Plaintiff was withholding business from the vendor JOBE Industrial Controls and Measurements ("JOBE") because of the motor vehicle accident. *Id.* Lastly, the complaint alleged that Plaintiff was in an intimate relationship with the DPW employee whose

---

[2] Plaintiff contends that Ms. Johnson was the only one of Mr. Ziemski's direct reports to be moved to his supervision. ECF No. 78 at 6. An email from Mr. Kebede to Mr. Gallagher states that Ms. Johnson should report to Plaintiff and that the rest of the division should "report to someone other than Ben Ziemski." ECF No. 78-17.

vehicle was involved in the incident, in violation of the City's sexual harassment policy. *Id.* The OIG Management Alert dated January 25, 2021, contains the allegations against Plaintiff and the findings of the subsequent investigation into his conduct. *See generally* ECF No. 67-11. Plaintiff was interviewed for the investigation on December 29, 2020. *Id.* at 1 n.1.

> **Vehicle Incident:** Plaintiff reviewed the camera footage of the motor vehicle incident. *Id.* at 1. When he was interviewed for the OIG investigation, Plaintiff explained that the footage showed JOBE's worker parked next to Ms. Johnson's vehicle, the worker forcefully opening the door into Ms. Johnson's vehicle, and the worker placing a large box on Ms. Johnson's trunk. *Id.* The investigation found that Plaintiff failed to report the incident and that he failed to follow the City's *Administrative Manual* policy AM-501-10 Motor Vehicle Accident, which Plaintiff admitted he knew about. *Id.* at 2; ECF No. 67-14. Plaintiff also admitted to the OIG's office and DPW's HR Division that he "inform[ed] the employees in [his] area to withhold . . . business from JOBE until they remedied the cost of damages to [Ms. Johnson's] vehicle." ECF No. 67-22 at 1.

> **JOBE Correspondence and Vendor Usage:** The City reviewed its *Administrative Manual* policy AM-227-1 Workplace Violence and determined that Plaintiff's actions could be coercive or intimidating and caused him to withhold business from JOBE, interfering with the operations of city business.[3] ECF No. 67-11 at 3, 4.

> **Alleged Sexual Harassment:** During Plaintiff's interview for the investigation, he told OIG that he did not have a romantic or personal relationship with Ms. Johnson outside of the workplace and that they only had a professional working relationship. *Id.* at 3. The investigation found that Plaintiff likely had a relationship with Ms. Johnson while she was his subordinate, in

---

[3] Defendant seems to contend that withholding business from JOBE violated *Civil Service Rule 40, Standards of Conduct and Performance*, which was referenced in Mr. Gallagher's termination letter to Plaintiff. ECF No. 67-1 at 8.

violation of the *Administrative Manual* policy AM-226-1 Sexual Harassment policy. *Id.*; ECF No. 67-12. It also found that he was likely in violation of the *Administrative Manual* AM-118-1 Electronic Communications policy, which prevents the use of City issued electronics for non-government businesses, such as sending private messages. ECF No. 67-11 at 3; ECF No. 67-15.

This issue was directed to DPW's HR Division, which began investigating the allegations of a relationship between Plaintiff and Ms. Johnson. Plaintiff was questioned regarding whether he was in a romantic relationship with Ms. Johnson, which he denied. ECF No. 67-20 at 65:14–66:6. According to Plaintiff, his denial was truthful because the relationship was over by that time. ECF No. 67-5 at 224:3–225:21; *see also* ECF No. 67-7; ECF No. 67-13 at 8, 28.

It is undisputed that the City does not have a policy that specifically prohibits fraternization among employees. ECF No. 67-20 at 31:6–33:9. However, there is a policy prohibiting breaches of trust and conduct unbecoming of City employees—Civil Service Commission Rule 56. ECF No. ECF No. 67-13 at 30.

### 4. Mr. Yosef Kebede

On October 13, 2020, Mr. Kebede gave Plaintiff a memorandum outlining some of his management performance deficiencies. The following day, Plaintiff responded to the memorandum in a letter to Director Garbark stating his disagreement and noting that he felt singled out and harassed. ECF No. 67-16. On October 19, 2020, Mr. Kebede met with Plaintiff to discuss the memorandum. ECF No. 67-19. During that meeting, Mr. Kebede agreed that some of the language was too harsh and stated that he would reissue the memorandum. *Id.* Before Mr. Kebede could reissue the memorandum, Plaintiff sent a second letter to Director Garbark alleging retaliation and a hostile work environment stemming from Mr. Kebede's memorandum. *Id.* Mr.

Kebede reissued the memorandum on November 16, 2020, which noted issues with the treatment plant at large and Plaintiff's division specifically. ECF No. 67-18.

### 5. Suspension and Termination

On February 24, 2021, Plaintiff was suspended pending the outcome of a pre-termination conference that was scheduled for March 1, 2021. ECF No. 67-21. On March 1, 2021, the conference was held with Plaintiff and his representative present. ECF No. 67-22. A Pre-Termination Conference Decision letter was issued on March 5, 2021. *Id.* The letter reviewed the charges against Plaintiff and findings from the OIG investigation. *Id.* The letter explained that Plaintiff was in violation of Civil Service Commission Rule 56, Cause for Discharge, Demotion or Suspension, which states, in relevant part:

> 1.    Discharge, demotion, or suspension of an employee in the Civil Service shall be for any just cause. Discharge shall be only for (a) unsatisfactory conduct which cannot be corrected through training, rehabilitation, or lessor [sic] forms of disciplinary action, (b) conduct which causes irreparable harm to the health or safety to any person or, (c) conduct which causes an irreparable breach of trust.
>
> 2.    The following are recognized by the Commission as just and sufficient causes for suspension, demotion, or discharge of an employee form the Civil Service, although charges may be based on grounds other than those enumerated which demonstrate just cause:
>
> b.    That the employee is incompetent, inefficient, or negligent in the performance of duty.
>
> c.    That the employee has been wantonly offensive in conduct toward clients, customers, other City employees, representatives of other governments or the public.
>
> h.    That the employee has committed acts while on or off duty which amount to conduct unbecoming to an employee of the City.
>
> i.    That the employee has been engaged in fraud, theft, misrepresentation of work performance, misappropriation of

> funds, unauthorized use of City property, obstruction of an
> official investigation or any other act of dishonesty.

*Id.* at 2. After review of the issues presented during the pre-termination conference, the City terminated Plaintiff's employment with DPW effective March 5, 2021. *Id.* The letter informed Plaintiff of his appeal rights and was signed by Mike Gallagher. *Id.*

Plaintiff filed his initial administrative charge alleging retaliation on March 8, 2021, with the Baltimore Community Relations Commission. ECF No. 67-3. Plaintiff filed an appeal of his termination with the Civil Service Commission. The hearing was opened on May 7, 2021, continued on June 2, 2021, and concluded on June 4, 2021. ECF No. 67-13 at 1. The Civil Service Commission issued a recommendation that ultimately upheld Plaintiff's termination based on the above rule. *See generally* ECF No. 67-13. The Commission reviewed the charges, made preliminary rulings, reviewed admitted exhibits, and summarized the testimony and evidence presented at the hearing. *Id.* at 1–27. The Commission also concluded that Plaintiff received adequate due process since he received written notice in the pre-termination letter, was represented at his pre-termination conference, and had an opportunity to respond to the reasons set forth as the basis for his termination, and his termination notice provided written notice of the reasons for his termination and informed him of his appeal rights. *Id.* at 27.

The Commission ultimately determined that there were legitimate, nonretaliatory reasons for Plaintiff's termination, including his handling of the incident with Ms. Johnson's car and the JOBE employee, the withholding of business from JOBE, and his relationship with Ms. Johnson, which was deemed inappropriate and found to constitute unsatisfactory conduct. *Id.* at 30. The Commission also stated that it is "undisputed" that Plaintiff lied during the investigations conducted by OIG and DPW HR and that his lies, while in a position of power and authority, amount to an irreparable breach of trust that cannot be corrected with lesser discipline or training.

7

*Id.* Further, the emails exchanged between Plaintiff and Ms. Johnson did not comply with City requirements. *Id.* Therefore, there was just and sufficient cause for termination, without the imposition of progressive discipline, taking into consideration Plaintiff's decades of service. *Id.* The Commission concluded that the decision to terminate Plaintiff was consistent with the Civil Service Commission Rule 56 and recommended that Plaintiff's termination be upheld, as there was sufficient cause. *Id.*

### B. Procedural Background

On July 10, 2023, the Amended Complaint was filed, asserting claims for discrimination and retaliation under Title VII. On December 2, 2024, following discovery, Defendant filed a motion for summary judgment. ECF No. 67. Plaintiff then filed a motion to strike deposition transcripts submitted in support of Defendant's motion, ECF No. 76, and also filed a response in opposition to Defendant's motion for summary judgment. ECF No. 78. Defendant filed a response in opposition to Plaintiff's motion to strike and a reply in support of its motion for summary judgment. ECF Nos. 79 & 87. Plaintiff filed a second motion to strike affidavits attached to Defendant's reply in support of its summary judgment motion, ECF No. 89, to which Defendant responded in opposition, ECF No. 90.

## II.    PLAINTIFF'S MOTIONS TO STRIKE

### A. First Motion to Strike

In his first motion to strike, Plaintiff contends that two depositions used by Defendant in support of its motion for summary judgment, ECF Nos. 67-6 & 67-20, should be stricken because they were not properly authenticated. ECF No. 76.  This argument is based on the requirements in Maryland Rule of Civil Procedure 2-415(d).

Defendant responds that the Maryland Rules do not apply in federal court, and the deposition transcripts are instead governed by Rule 30(e)(1) of the Federal Rules of Civil Procedure. ECF No. 79, ¶¶ 3–4. Here, the deponents in both of the contested depositions waived their right to review and sign their depositions, *id.* ¶ 5 (citing ECF No. 67-6 at 108:8 and ECF No. 67-20 at 69:12), and Rule 30 does not require a notary seal for proper authentication, *id.* ¶ 6.

Before a deposition is completed, a deponent or party may request that the deponent be permitted 30 days "(A) to review the transcript or recording; and (B) if there are changes in form or substance, to sign a statement listing the changes and the reasons for making them." Fed. R. Civ. P. 30(e)(1); *see also* 8A Wright & Miller, Fed. Prac. & Proc. § 2118 (3d ed. 2025) ("As amended in 1993, Rule 30(e) requires review by the witness only if that is requested by a party before completion of the deposition."). Otherwise, Rule 30 does not require a deposition transcript to be signed by the deponent. Here, there is no evidence that a party requested review of the transcript before completion of the deposition, and both depositions state that a signature was waived. ECF No. 67-6 at 108:8 and ECF No. 67-20 at 69:12. Rule 30 does not require a deposition transcript to be sealed by a notary. Plaintiff's first motion to strike, ECF No. 76, is unfounded and shall be denied.

### B. Second Motion to Strike

In his second motion to strike, ECF No. 89, Plaintiff argues that, in its reply in support of its summary judgment motion, Defendant produced new facts not readily available in discovery and presented affidavits from witnesses who were not deposed. Plaintiff asks that the affidavits be stricken and requests leave to file a surreply, citing Local Rule 104.7. *Id.* Plaintiff has not filed a proposed surreply.

In response, Defendant argues that Local Rule 104.7 (D. Md. 2025) does not support the relief Plaintiff seeks. ECF No. 90, ¶ 1. Further, Defendant points out that every witness who provided an affidavit, except for one, was deposed during discovery. *Id.* ¶ 2. The only exception is Quinton Herbert, who provided an affidavit merely to authenticate a document and is not a fact witness. *Id.* Defendant argues that it was not required to provide the challenged affidavits during discovery and that its reply did not present any new arguments or evidence to justify a surreply. *Id.* ¶¶ 3, 4.

The Court finds no justification to strike the challenged affidavits or to grant leave for a surreply. Plaintiff's reliance on Local Rule 104.7 is misplaced. That rule requires counsel to confer in the event of a discovery dispute and has nothing to do with submitting affidavits in support of summary judgment motions or permitting surreplies. Local Rule 105.2(a) provides that surreplies are not permitted to be filed unless ordered by the Court. *See generally* Loc. R. 104.7 (D. Md. 2025). "[S]urreplies are disfavored in this District . . . ." *Chubb & Son v. C & C Complete Servs., LLC*, 919 F. Supp. 2d 666, 679 (D. Md. 2013). In this case, a surreply would not alter or inform this Court's assessment of Defendant's summary judgment motion. And there was nothing improper about Defendant attaching the challenged affidavits to its reply. Plaintiff's second motion to strike, ECF No. 89, shall also be denied.[4]

## III.  DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

### A.  Standard of Review

A court may grant a party's summary judgment motion under Rule 56 of the Federal Rules of Civil Procedure "if the movant shows that there is no genuine dispute as to any material fact

---

[4] Although both motions to strike are denied, the Court need not consider the challenged materials in deciding Defendant's summary judgment motion.

and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Belyakov v. Med. Sci. & Computing*, 86 F. Supp. 3d 430, 441 (D. Md. 2015) (citations omitted); *Am. Metal Forming Corp. v. Pittman*, 52 F.3d 504, 507 (4th Cir. 1995) (quoting *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 250 (1986)). A fact is "material" if it "might affect the outcome of the suit under the governing law[,]" and a genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248; *see also Raynor v. Pugh*, 817 F.3d 123, 130 (4th Cir. 2016) (holding that the lower court's decision to grant defendant-appellee's motion for summary judgment was erroneous because "genuine disputes of material fact underlie[d] both prongs of [plaintiff-appellant's] claim."). A party can establish the absence or presence of a genuinely disputed fact through "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c)(1)(A). "The court must view all the facts, including reasonable inferences to be drawn from them, in the light most favorable to the nonmovant," *Spinks v. Maryland*, No. CV MJM-23-3184, 2024 WL 4122222, at *5 (D. Md. Sept. 9, 2024) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)), but the court is not permitted to weigh the evidence, make credibility determinations, or decide the truth of disputed facts, *Anderson*, 477 U.S. at 255.

"The party moving for summary judgment bears the initial burden of demonstrating the absence of a genuine dispute of material fact." *Med. Mut. Ins. Co. of N. Carolina v. Gnik*, 93 F.4th 192, 200 (4th Cir. 2024) (citing *Bouchat v. Balt. Ravens Football Club, Inc.*, 346 F.3d 514, 522 (4th Cir. 2003)). The burden then shifts to the nonmovant to "set forth specific facts showing that there is a genuine issue for trial." *Bouchat*, 346 F.3d at 522 (quoting Fed. R. Civ. P. 56(e)).

### B. Analysis

Plaintiff asserts claims against Defendant for race discrimination in violation of Title VII based on his suspension and termination; and retaliation in violation of Title VII based on his termination and memoranda written by Mr. Kebede.

### 1. Title VII

Title VII prohibits an employer from discriminating against an individual with respect to employment based upon the individual's race, color, religion, sex, or national origin, and from retaliating against an individual for engaging in activity protected by Title VII. *See* 42 U.S.C. § 2000e-2(a)(1) (anti-discrimination provision); *id.* § 2000e-3(a) (anti-retaliation provision). Specifically, Title VII's anti-discrimination provision makes it unlawful for an employer to "discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race[.]" *Id.* § 2000e-2(a). Also, Title VII's anti-retaliation provision makes it unlawful for an employer to discriminate against an employee for "oppos[ing] any practice made an unlawful employment practice by [Title VII]" or because the employee has "made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under [Title VII]." *Id.* § 2000e-3(a).

The plaintiff bears the burden of proving her claims through one of two methods. The plaintiff may offer "direct or indirect" evidence of discriminatory or retaliatory animus under "ordinary principles of proof[,]" *Burns v. AAF-McQuay, Inc.*, 96 F.3d 728, 731 (4th Cir. 1996) (citation omitted), *cert. denied*, 520 U.S. 1116 (1997), or follow the burden-shifting framework outlined by the Supreme Court in *McDonnell Douglas Corp.*, 411 U.S. at 793. *See also Smith v. CSRA*, 12 F.4th 396, 416 (4th Cir. 2021).

Under *McDonnell Douglas*, the precise formulation of the required prima facie showing will vary in "differing factual situations." 411 U.S. at 802 n.13. If a plaintiff establishes a prima facie case, a presumption of illegal discrimination or retaliation arises, and the burden shifts to the employer to state a legitimate, non-discriminatory reason for its adverse action. *Foster v. Univ. of Maryland-E. Shore*, 787 F.3d 243, 250 (4th Cir. 2015). "This burden is one of production, not persuasion; it can involve no credibility assessment." *Westmoreland v. TWC Admin. LLC*, 924 F.3d 718, 725 (4th Cir. 2019) (quoting *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 142 (2000)). Usually, at the summary judgment stage, if an employer has proffered evidence of a legitimate reason for its adverse action, the Court may assume, without deciding, that the plaintiff established a prima facie case. *See Bagwell v. Downtown P'ship of Balt., Inc.*, Civ. No. ELH-18-1786, 2020 WL 247293, at *7 n.2 (D. Md. Jan. 15, 2020). If the employer shows legitimate, non-discriminatory reasons for the adverse action, the burden shifts back to the plaintiff to rebut the employer's evidence by demonstrating that the employer's purported non-discriminatory or non-retaliatory reasons are just a pretext for unlawful discrimination. *Texas Dep't of Cmty. Affs. v. Burdine*, 450 U.S. 248, 256 (1981).

## 2. Race Discrimination

Plaintiff identifies his suspension and termination as the grounds for his race discrimination and disparate treatment claims. ECF No. 78 at 19, 22. Defendant both disputes that Plaintiff has established a prima facie case of race discrimination and proffers evidence of a legitimate, non-discriminatory reasons for its adverse actions. Generally, a prima facie case of discrimination requires the plaintiff to show that an employer took an adverse employment action against the plaintiff "under circumstances giving rise to an inference of unlawful discrimination." *Adams v. Trs. of the Univ. of N.C.-Wilmington*, 640 F.3d 550, 558 (4th Cir. 2011) (citation omitted). To

make a prima facie case of disparate treatment specifically, a plaintiff "must show: (1) membership in a protected class; (2) satisfactory work performance; (3) adverse employment action; and (4) different treatment from similarly situated employees outside the protected class." *Perkins v. Int'l Paper Co.*, 936 F.3d 196, 207 (4th Cir. 2019) (citing *Coleman v. Md. Court of Appeals*, 626 F.3d 187, 190 (4th Cir. 2010); *accord Magassouba v. Prince George's Cnty.*, 773 F. Supp. 3d 196, 214–15 (D. Md. 2025). There is no dispute that Plaintiff has established that he is a member of a protected class and that he suffered an adverse employment action when he was suspended and terminated. The second and fourth elements are disputed, however.

Plaintiff identifies no circumstances to support a reasonable inference that he was suspended and terminated based on his race. Specifically, Plaintiff presents no evidence that similarly situated employees outside the protected class received different treatment.

As recently explained by the Fourth Circuit:

> The similarly situated element requires a plaintiff to "provide evidence that the proposed comparators are not just similar in *some* respects, but 'similarly-situated in *all respects*.'" *Spencer v. Va. State Univ.*, 919 F.3d 199, 207–08 (4th Cir. 2019) (quoting *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 583 (6th Cir. 1992)). To that end, the plaintiff must prove that she and the comparator "dealt with the same supervisor, were subject to the same standards[,] and engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it." *Haynes v. Waste Connections, Inc.*, 922 F.3d 219, 223–24 (4th Cir. 2019) (cleaned up). To be sure, "a comparison between similar employees will never involve precisely the same set of work-related offenses occurring over the same period of time and under the same sets of circumstances." *Id.* at 223 (cleaned up). Nonetheless, "[t]he similarity between comparators and the seriousness of their respective offenses must be clearly established in order to be meaningful." *Lightner v. City of Wilmington*, 545 F.3d 260, 265 (4th Cir. 2008).

*Cosby v. S.C. Prob., Parole & Pardon Servs.*, 93 F.4th 707, 714 (4th Cir. 2024).

14

Plaintiff argues that he has established a prima facie claim of disparate treatment because there is no record that any other individual that acted in a similar manner, with in-office relationships, misuse of City email, or discretionary vendor decisions, have ever been suspended or terminated. This argument simply ignores that it is Plaintiff's burden to show that, in being subjected to the adverse action, he was treated differently than similarly situated employees outside his protected class. Plaintiff has not provided any comparator evidence to make this showing, other than Ms. Johnson. Ms. Johnson herself is not a valid comparator for several reasons, including the fact that, unlike Plaintiff, she was not a manager. Plaintiff does not name any comparator that was "similarly situated in *all respects*." *Spencer*, 919 F.3d at 207–08. Because Plaintiff cannot establish a prima facie case of race discrimination, his claim cannot survive summary judgment.

Even if Plaintiff could establish a prima facie case, Defendant has produced legitimate, non-discriminatory reasons for Plaintiff's suspension and termination, and Plaintiff offers no evidence that these reasons are merely a pretext for discrimination. Defendant explains that Plaintiff was terminated as a result of the OIG investigation where the City learned that Plaintiff violated City policies and Civil Service Commission Rules by attempting to coerce a City vendor to pay for damages to Ms. Johnson's vehicle, withholding business from that vendor, and giving false information to the OIG and DPW HR about Plaintiff's relationship with Ms. Johnson. ECF No. 67-1 at 26. Prior to termination, Plaintiff was suspended because he was under investigation for the foregoing misconduct. *Id.* at 22. At this stage, Defendant's burden "is one of production, not persuasion[.]" *Wannamaker-Amos v. Purem Novi, Inc.*, 126 F.4th 244, 256–57 (4th Cir. 2025) (quoting *Reeves*, 530 U.S. at 142). The Court is not to assess the credibility of the reasons offered at this stage, nor "evaluate 'whether the reason was wise, fair, or even correct.'" *Id.* (quoting *Villa v. CavaMezze Grill, LLC*, 858 F.3d 896, 901 (4th Cir. 2017)).

Defendant has satisfied its burden. It identifies record evidence demonstrating the non-discriminatory reasons for its actions, including the pre-termination letter sent to Plaintiff that clearly explains the reasons for termination, none of which involve race. In September 2020, OIG received anonymous complaints about Plaintiff regarding allegations of abuse of power and policy violations. ECF No. 67-11 at 1. The complaint alleged that he "failed to report alleged damage to a DPW employee's personal motor vehicle by a Baltimore City vendor" that occurred on City property. *Id.* The complaint also alleged that Plaintiff was withholding business from the vendor, JOBE, because of the motor vehicle accident. *Id.* Lastly, the complaint alleged that Plaintiff was in an intimate relationship with Ms. Johnson, the DPW employee whose vehicle was involved in the incident, in violation of the City's sexual harassment policy. *Id.*

Following an investigation into the allegations, during which Plaintiff was interviewed, Plaintiff was suspended and then terminated based on a finding that he violated Civil Service Commission Rule 56. ECF No. 67-22; ECF No. 67-13. The investigation found that Plaintiff improperly handled the incident with JOBE and Ms. Johnson, that he misrepresented his relationship with Ms. Johnson during the investigations by OIG and DPW HR, and that he breached the electronic communications policy. ECF No. 67-22; ECF No. 67-13. These acts, Defendant found, amounted to an "irreparable breach of trust," leading to Plaintiff's termination under Civil Service Commission Rule 56. ECF No. 67-13 at 30.

The burden shifts to Plaintiff to "prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination." *Abilt v. Cent. Intel. Agency*, 848 F.3d 305, 315 (4th Cir. 2017) (quoting *Burdine*, 450 U.S. at 253). "A plaintiff may establish pretext through two routes. The first is offering evidence that the employer's justification is 'unworthy of credence.'" *Wannamaker-Amos*, 126

F.4th at 257 (quoting *Reeves*, 530 U.S. at 143). "The second is adducing other forms of circumstantial evidence sufficiently probative of discrimination." *Id.* (citing *Reeves*, 530 U.S. at 147). "If the plaintiff makes either showing of pretext, the case must be decided by a trier of fact and cannot be resolved on summary judgment." *Id.* (citing *Sempowich v. Tactile Sys. Tech., Inc.*, 19 F.4th 643, 652 (4th Cir. 2021)).

Here, Plaintiff offers no evidence to suggest that the reasons offered for his suspension and termination are unworthy of credence or that these actions were in any way based on his race. Plaintiff argues that his suspension and termination were pretextual because the City does not have a policy preventing fraternization between employees. But Civil Service Commission Rule 56 does not purport to forbid fraternization specifically; if forbids, among other things, "conduct unbecoming to an employee of the City." ECF No. 67-22. Plaintiff was found by the City to have violated this rule through review of evidence gathered from an investigation. For example, Defendant's finding that Plaintiff was dishonest about his relationship with Ms. Johnson was supported by electronic communications and Ms. Johnson's statements. Plaintiff's disputes as to the findings that supported the discipline he received are insufficient to show that the reasons offered for the discipline are unworthy of credence.

Accordingly, Defendant is entitled to summary judgment on Plaintiff's race discrimination claims.

### 3. Retaliation

Plaintiff claims that he was unlawfully retaliated against when Mr. Kebede issued memoranda identifying deficiencies in Plaintiff's work performance and when Plaintiff was later terminated. ECF No. 78 at 25. Defendant argues that Plaintiff's retaliation claims fail because there

is no evidence of a causal connection between Plaintiff's protected activity and his ultimate termination based on the passage of time between events. ECF No. 67-1 at 30–33.

"To establish a prima facie claim of retaliation, a plaintiff must show: (1) that he engaged in protected activity, (2) that the employer took a materially adverse action against him and (3) there is a causal connection between the protected activity and the adverse action." *Perkins v. Int'l Paper Co.*, 936 F.3d 196, 213 (4th Cir. 2019). There are two categories of protected activities for a retaliation claim: participation and opposition. *Id.* (citation omitted). "An employer may not retaliate against an employee for participating in an ongoing investigation or proceeding under Title VII, nor may the employer take [an] adverse employment action against an employee for opposing discrimination practices in the workplace." *Id.* (citation omitted) (alteration in *Perkins*). Second, as to the materially adverse action requirement, the Supreme Court explained "a plaintiff must show that a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006) (internal quotation omitted). Finally, "to establish the necessary causation for a retaliation claim, 'the employer must have taken the adverse employment action *because* the plaintiff engaged in a protected activity.'" *Id.* at 214 (quoting *Dowe v. Total Action Against Poverty*, 145 F.3d 653, 657 (4th Cir. 1998)) (emphasis in *Dowe*). A plaintiff need not show that their protected activities were but-for causes of the adverse action at the prima facie stage. *Strothers v. City of Laurel*, 895 F.3d 317, 335 (4th Cir. 2018). But-for causation need only be established at the pretext stage of the burden-shifting framework. *Id.* (citing *Foster*, 787 F.3d at 251). "An employee may establish prima facie causation simply by showing that (1) the employer either understood or should have understood the employee to be engaged in protected activity and

(2) the employer took adverse action against the employee soon after becoming aware of such activity." *Id.* at 335–36.

Once a plaintiff establishes a prima facie case, "[t]he burden then shifts to the employer to demonstrate that 'its purportedly retaliatory action was in fact the result of a legitimate non-retaliatory reason.'" *Sempowich*, 19 F.4th at 653–54 (quoting *Foster*, 787 F.3d at 250). Finally, "[i]f the employer does so, the burden shifts back to the plaintiff to show that the employer's purported nonretaliatory reasons were not its true reasons, but were a pretext for discrimination." *Id.* at 654 (internal quotations omitted).

There were multiple instances of protected activity by Plaintiff relevant to this case: (1) Plaintiff's original internal complaint alleging race discrimination in March 2020, ECF No. 67-9; (2) Plaintiff's two letters to Director Garbark alleging harassment and retaliation on October 14, 2020, and November 12, 2020, ECF Nos. 67-16 & 67-19; and (3) Plaintiff assisting Ms. Johnson in making an EEO complaint in or around July or August 2020, *see* ECF No. 67-6 at 15:9–16:4.[5] Plaintiff asserts two actions by Defendant he contends were materially adverse: (1) Mr. Kebede's memoranda issued on October 13, 2020, and November 16, 2020, ECF Nos. 67-16, 67-18, 67-19; and (2) Plaintiff's termination on March 5, 2021.

Once Plaintiff identifies materially adverse actions, he must present evidence of a causal connection between them and any of his protected activities. "An employee may establish prima facie causation simply by showing that (1) the employer either understood or should have understood the employee to be engaged in protected activity and (2) the employer took adverse action against the employee soon after becoming aware of such activity." *Strothers*, 895 F.3d at

---

[5] Plaintiff seems to assert the EEOC charges he filed after his termination as protected activity in support of his retaliation claim. While filing an EEOC charge is protected activity, both of Plaintiff's charges were filed after he was terminated and therefore could not have caused his termination.

335–36. But even assuming there was some evidence suggesting a causal connection between a materially adverse action and Plaintiff's protected activities, Defendant has satisfied its burden of showing that its adverse actions—both the memoranda and the termination—were for legitimate, non-retaliatory reasons. Thus, the burden shifts back to Plaintiff to show that Defendant's reasons were mere pretext for retaliation. *See Sempowich*, 19 F.4th at 654. Plaintiff fails to carry this burden.

### i.    Mr. Kebede's Memoranda

Plaintiff argues that the memoranda noting deficiencies in Plaintiff's area of management, written by Mr. Kebede and issued on October 13, 2020, and November 16, 2020, constitute materially adverse actions. *See* ECF Nos. 67-16, 67-18, 67-19. Performance improvement plans and other disciplinary memoranda can constitute adverse actions for the purposes of a retaliation claim. *See Howerton v. Bd. of Educ. of Prince George's Cnty.*, Civ. No. TDC-14-0242, 2015 WL 4994536, at *18 (D. Md. Aug. 19, 2015) ("[R]eprimand letters placed in an employee's personnel file could constitute materially adverse employment actions."). In *Howerton*, the reprimand letters in question explicitly stated that if the plaintiff had further instances of similar behavior, he would be recommended for serious disciplinary action, including termination, and that the letter itself was a step in a process that could result in termination. *Id. Howerton* is distinguishable from this case. Here, Mr. Kebede testified in his deposition that the memos he issued to Plaintiff were not disciplinary memos. ECF No. 67-17 at 56:3–8. And Plaintiff presents no proof that the letters were placed in Plaintiff's personnel file. Plaintiff has not shown that Mr. Kebede's memoranda would dissuade a reasonable employee from making or supporting a charge of discrimination. *Burlington N. & Santa Fe Ry. Co.*, 548 U.S. at 68; *see Thorn v. Sebelius*, 766 F. Supp. 2d 585, 593, 603 (D. Md. 2011), *aff'd*, 465 F. App'x 274 (4th Cir. 2012) (finding that letter of counseling regarding

plaintiff's failure to follow supervisory instructions and threatening further disciplinary action if performance did not improve was not materially adverse). Accordingly, Plaintiff cannot base a prima facie case of retaliation on Mr. Kebede's memoranda.

Even if Plaintiff could make a prima facie case of retaliation based on the memoranda, Defendant has articulated a legitimate, nonretaliatory reason for their issuance: the memoranda highlighted areas of concern for the wastewater plant and identified deficiencies found during a Maryland Occupational Safety and Health inspection and morale issues within Plaintiff's team. ECF No. 67-17 at 22:10–23:5; ECF No. 67-18. Thus, the burden shifts back to Plaintiff to show that the purported non-retaliatory reason for the memoranda is mere pretext for unlawful retaliation. *See Sempowich*, 19 F.4th at 654.

Plaintiff concedes that Mr. Kebede wrote similar memoranda to two other employees, ECF No. 78 at 17, and Plaintiff and these two other employees were all "key figures for Black River management[.]" ECF No. 67-18; ECF No. 67-17 at 56:9–57:58:6. Plaintiff fails to put forth any evidence to suggest that Defendant's proffered reasons for issuing the memoranda were false. He does not present, for example, any evidence to rebut Mr. Kebede's general observations about the plant or Plaintiff's team. *See Belyakov v. Leavitt*, 308 F. App'x 720, 730 (4th Cir. 2009) (holding plaintiff failed to present sufficient evidence to show that legitimate, nonretaliatory reasons were false because plaintiff failed to rebut evidence that plaintiff instigated arguments and disobeyed instructions, and nothing in the record suggests that defendant did not believe plaintiff was confrontational, insubordinate, and disruptive").

Therefore, Defendant is entitled to summary judgment on Plaintiff's retaliation claim based on Mr. Kebede's memoranda.

ii.    **Plaintiff's Termination**

Plaintiff was terminated on March 5, 2021. A termination clearly constitutes a materially adverse action for purposes of a retaliation claim. *Gibson v. Marjack Co.*, 718 F. Supp. 2d 649, 655 (D. Md. 2010). The decision maker behind Plaintiff's termination was Mr. Gallagher. "As this Court has held, no causal connection can exist between an employee's protected activity and an employer's adverse action if the employer was unaware of the activity." *Strothers*, 895 F.3d at 336 (citing *Dowe*, 145 F.3d at 657). Plaintiff provides no evidence that Mr. Gallagher was aware of any of Plaintiff's protected activities when signed off on Plaintiff's termination. Thus, Plaintiff cannot make a prima facie case of retaliation based on his termination. But even if Plaintiff could present a prima facie case that his termination was retaliatory, Defendant produced legitimate, non-retaliatory reasons for Plaintiff's termination. As discussed in Part III.B.2 *supra*, the City determined that Plaintiff violated City policies and Civil Service Commission rules. As explained *supra*, Plaintiff offers no evidence to suggest that the termination was a pretextual.

Therefore, Defendant is entitled to summary judgment on Plaintiff's retaliation claim based on his termination by Mr. Gallagher.

## IV.    CONCLUSION

For the foregoing reasons, Defendant's motion for summary judgment (ECF No. 67) will be GRANTED, and Plaintiff's motions to strike (ECF Nos. 76 & 89) will be DENIED. Both parties' motions for leave to file excess pages (ECF Nos. 68, 74, 88), and Defendant's motion for leave to file responses to Plaintiff's requests for admissions out of time (ECF No. 73), will be GRANTED. A separate Order will follow.

 9/30/25
Date

Matthew J. Maddox
United States District Judge